16669

HUGHES v. AETNA LIFE INS. CO.
(72 S. E. (2d) 645)

*Messrs. Watkins & Watkins,* of Anderson, *for Appellant,*

*Mr. R. L. Ballentine,* of Anderson, *for Respondent,*

September 9, 1952.

As Modified on Denial of Rehearing.

TAYLOR, Justice.

This action was brought in the Court of Common Pleas of Oconee County upon a group life insurance policy which carried among others a provision for the continuance of the insurance without payment of premiums in the event of total disability. The case came on for trial at the March, 1949, term in said county and resulted in a verdict for the plaintiff. The defendant moved for judgment *non obstante veredicto* and failing in that for a new trial. This motion was refused and appellants now come to this Court upon exceptions which present two questions: first, that the motion for judgment *non obstante veredicto* should have been granted on the ground that there was no evidence that appellant breached his contract with respondent; second, that there was no evidence that respondent complied with the terms of his policy by furnishing proof of his permanent total disability.

The policy in question was issued in 1939 as a group policy to Courtenay Manufacturing Company with certi-

ficates being issued to respondent and some 500 fellow employees. The amount of insurance on each individual being $1,000.00.

The pertinent portion of the policy as set forth in appellant's brief appears as follows:

"If an employee, while insured, and while under the age of 60, should become totally disabled, and if such disability continues after the discontinuance of premium payments for such employee's insurance, the insurance will be extended without payment of premiums during the continuance of such total disability for a period of twelve months, or until prior receipt of the proof of permanent total disability. Also, if before the discontinuance of premium payments for any employee, or within twelve months thereafter, written proof is received at the Home Office of the Company that total permanent disability of such employee began while such employee was insured, and under the age of 60, the insurance of that employee will be extended without payment of premium during the further continuance of such permanent total disability for a period of one year from the receipt of such proof and for successive periods of one year each during the continuance of such disability, provided proof of its continuance is submhitted to the Home Office, in writing, within three months preceding each such year."

The testimony is at variance as to exactly what transpired but considering it in the light most favorable to plaintiff as we must for purpose of such motion, we are inclined to agree with the Trial Judge that the evidence was such as to require his submitting the case to the jury. The action was brought for fraudulent breach of contract but the Judge ruled that there was no evidence of fraud and therefore submitted only the question of whether or not there had been a breach.

Mr. J. E. Cox a former employee of Courtenay Manufacturing Company handled the insurance collection for such company. A portion of the respondent's testimony shows

that he paid the premiums when due to Mr. Cox and continued to pay such premiums even after he had incurred his disability until February 18, 1946, when he tendered the payment of his premiums and Mr. Cox refused to accept such payment. A portion of respondent's testimony appears as follows:

"Q. Now, then, when we get down here to February 18, 1946, what happened on the day that you paid that payment? A. The last payment?

"Q. Yes, sir. A. Well, it happened I was refused.

"Q. Who did you talk to that day? A. Mr. Cox.

"Q. What position did he have with the mill? A. Well—

"Q. What did he have to do with the insurance? A. Well, I reckon he was the pay Clerk, I reckon.

"Q. Who did you pay your premiums to? A. I paid them to Mr. Cox.

"Q. Mr. Cox? All right. What did he tell you on that day? A. He told me that my policy was discontinued.

"Q. All right. What did you say to him? A. I told him I didn't think he ought to do that.

"Q. Were you still disabled at that time? A. Yes, sir.

"Q. Doing any work of any kind? A. No, sir.

"Q. What did he say then? A. Whenever I told him I didn't think he ought to do that, he said, well, we did do it anyhow. That's what he said.

"Q. Mr. Hughes, what, if anything did you say to him at that time or immediately afterwards, within the next few days, about this insurance policy? A. Well, I tried to get him to fix that thing up to where we could get some papers signed to where we could carry it on through.

"Q. What did he say to that? A. He absolutely refused to do that.

"Q. Did he ever give you any papers to sign to transfer the policy into some other kind? A. No, sir.

"Q. Did you offer to pay the premiums? Did you offer to pay the premiums right on? A. Yes, sir.

"Q. Have they accepted any premiums from you since the 18th day of February, 1946? A. No, that was the last.

"Q. Have they converted this policy as requested by you? A. No, sir."

At another place he was asked if he had sent appellant life insurance company any proof that he was totally disabled and he replied, "Well, that was what I carried to the office when I was paying, trying to get that straightened out there." He stated several times in his testimony that he had on numerous occasions endeavored to get Mr. Cox to straighten out his insurance for him. He further testified that he had read his certificate and "I went as near as I knew how with Mr. Cox to get it straightened out." He stated that he had never been furnished any blanks with which to file proof of disability, but Mr. Cox testified that he knew of respondent's disability and had written the Home Office for blanks with which to file such notice, but later denied having done so. However such blanks were never filed. At another place in the testimony it was shown that Mr. Cox wrote a letter, which was notarized, for the purpose of securing the release of respondent's son from the United States Army because of respondent's illness. From such testimony the jury could have arrived at the conclusion that Mr. Cox had actual knowledge of respondent's disability and that repeated request had been made of him to do what was necessary to have respondent's group insurance transferred to an individual policy which would relieve him of further premium payments during the period of disability.

There is much testimony from which the jury could have decided otherwise, some of which is directly contradictory to that heretofore referred to, especially the testimony of Mr. Cox, but we are of the opinion that the testimony was such as to require the submission of the case to the jury, that all exceptions should be overruled, the judgment affirmed, and It Is So Ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.